IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| INTEGRATED TECHNOLOGICAL SYSTEMS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> FIRST INTERNET BANK OF INDIANA, <br><br> *Defendant*. | § <br> § <br> § Case No. 2:16-CV-00417-JRG-RSP <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

## REPORT AND RECOMMENDATION

This is a patent infringement action in which Integrated Technological Systems, Inc. (ITS) accuses First Internet Bank of Indiana (FIB) of infringing four patents, United States Patent Nos. 7,912,786, 8,131,643, 8,321,347, and 8,620,809. Dkt. No. 1 (Complaint) ¶ 2. FIB moves to dismiss the complaint for failure to state a claim, contending that the subject-matter claimed by the patents is not eligible for patenting under 35 U.S.C. § 101. Dkt. No. 26. The Court agrees. FIB's motion (Dkt. No. 26) should be granted.

## DISCUSSION

A complaint should be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), a court "accept[s] all well-pleaded facts as true, and view [s] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). The court must then decide whether those facts state a plausible claim for relief. *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 217 (5th Cir. 2012). "A claim is plausible if 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

1

misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260 (5th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, the standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "The factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555)).

The plausibility standard "does not give district courts license to look behind [a complaint's] allegations and independently assess the likelihood that the plaintiff will be able to prove them at trial." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a plaintiff is generally required to provide "only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [the plaintiff's] legal argument." *Skinner*, 562 U.S. at 530. The "short and plain" statement does not "countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346 (2014).

### A. Subject-Matter Eligibility

A patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The exception is that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S.Ct. 2107, 2116 (2013) (quoting

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S.Ct. 1289, 1293 (2012)). In assessing subject-matter eligibility, a court must "first determine whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347, 2355 (2014). If the claims are directed to an ineligible concept, the court must then "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 132 S.Ct. at 1298, 1297).

### B. Section 101 and the Pleading Stage

Although procedure is often slighted in the context of § 101 motions, the Court does not take invalidating a patent at the pleading stage lightly. It is true, as FIB suggests, that courts routinely invalidate patents under § 101 on a motion to dismiss, and that this practice is condoned by the Federal Circuit. *See, e.g., In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 610 (Fed. Cir. 2016). There are limitations to the practice, however, that restrict the determination of subject-matter ineligibility at the pleading stage.

First is the scope of what a court can consider on a motion to dismiss. The motion to dismiss challenges the sufficiency of the face of the complaint. *See Iqbal*, 556 U.S. at 678. Courts evaluating patent-eligibility at the pleading stage nevertheless consider the asserted patent and relevant prosecution history as matters of public record appropriate for judicial notice. *See Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1344 (Fed. Cir. 2016) (discussing specification); *Mark I Marketing Corp. v. R.R. Donnelley & Sons Co.*, 66 F.3d 285, 292 (Fed. Cir. 1995) ("[T]he prosecution history of the '241 patent is a matter of public record."). At some point, however, the presentation of matters outside the pleadings gives rise to a court's discretion to convert the dismissal motion to a motion for summary judgment. *See* Fed.

R. Civ. P. 12(d); *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 785 (5th Cir. 2007).

Second, while patent eligibility is a question of law, the legal conclusion may contain underlying factual issues best resolved at a later stage. *See, e.g.*, *Diamond Grading Techs. Inc. v. Am. Gem Soc'y*, No. 2:14-CV-1161-RWS-RSP, 2016 WL 5719700, at *3 (E.D. Tex. Sept. 12, 2016), *report and recommendation adopted*, No. 2:14-CV-1161-RWS-RSP, 2016 WL 5475494 (E.D. Tex. Sept. 29, 2016); *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013). Third, and similarly, "it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012). In sum, invalidity under § 101 can be declared at the pleading stage if patent eligibility can be determined on the basis of materials properly considered on a motion to dismiss, purely as a matter of law, when claim construction is unnecessary.

## C. *Alice* Step One

With this background in mind, the Court turns to *Alice* Step One. In determining whether a claim is directed to an abstract idea, it is necessary to consider the language of the claims. The question of subject-matter eligibility must be determined on a "claim-by-claim basis." *Accenture*, 728 F.3d at 1347. "[D]escribing the claims at . . . a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016). However, it is unnecessary to address the patent eligibility of each asserted claim if "all the claims are substantially similar and

4

linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (internal quotation and citation omitted).

The patents-in-suit share a substantially similar specification. The summary of the invention in each patent describes the "primary objective" of the invention—"to provide a method and system for sending money transfers such as cash between a sender and a remotely located recipient without a pre-established relationship, such as an account link, between the parties." *See, e.g.*, '786 patent at 2:38-42. The concept to which the patents are directed is illustrated by an example in which the sender of funds first enters their account information "via an electronic input device . . . such as . . . a touch-tone telephone, a computer modem, an automated teller machine (ATM), and the like." '786 patent at 6:40-43. The sender then authorizes a money transfer, funds are transferred to an "electronic escrow agent," and the funds are then forwarded to the recipient. *Id.* at 6:29-58.

Each asserted claim is directed to this same concept. The claims differ to the extent they recite variations in how to implement the concept. The '786 patent claims, for example, recite a "computer machine system for transferring money funds." '786 patent at 14:39-40. The computer system recited by the '643 patent claims, by contrast, is "adapted to being accessed by a communication medium device," such as a phone. '643 patent at 14:41-67. Thus, the claims differ in the types of hardware and the means used to transfer the funds.

Importantly, however, the patents do not describe the type or configuration of the hardware as inventive. To the contrary, the specifications state that "[t]he invention does not require special hardware since existing ATM terminals can easily be used with the invention." *See, e.g.*, '786 patent at 6:61-63. The specifications also explain that while the preferred embodiment "describes using a touch-tone telephone to send the money transfer," other devices

can be used, including "PC (personal computers connected to modems, the Internet, merchant card swipe machines, live telephone operators, P.O.S. (Point of Sale Terminals, and automated telephone operators." '786 patent at 14:30-37. No representation is made by the patents that these components are anything other than known and conventional.

Because each asserted claim is directed to the same concept, and because the claims only differ in the way in which the concept is implemented, the '786 patent claims are sufficiently representative of all the asserted claims for purposes of determining subject-matter eligibility. Claim 1 of the '786 patent recites:

> 1. An automated business process computer machine system for transferring money funds comprising:
>
> a computer system which receives, processes and transmits account information data in order to effect simultaneous money transfers from sending debit card accounts to receiving debit card accounts; and
>
> the computer system being adapted to being accessed by a human sender's communication medium device, wherein the computer system receives the account information data and transfer authorization data from the communication medium device, and processes and transmits the data in automated modes with data transmission language through transmission and electronic mediums, so that the computer system processes and effects a money transfer from a sending debit card account to a receiving debit card account without the necessity of a pre-established relationship between the sending debit card account and the receiving debit card account, and in which the computer system simultaneously repeats the computer system processes and, by the computer system, effects additional transfers between different sending debit card accounts and different receiving debit card accounts causing simultaneous money transfers from the different sending debit card accounts to the different receiving debit card accounts.

'786 patent at 14:39-64.

The question, then, is whether the concept to which claim 1 is directed, i.e., the concept of transferring funds between accounts without a pre-established link between the accounts is an

abstract idea. ITS highlights that the claims include a particular limitation that is novel—"without the necessity of a pre-established relationship between the sending debit card account and the receiving debit card account," as recited in claim 1 of the '786 patent, for example. *See, e.g.*, Dkt. No. 29-1 at 4. Indeed, the Examiner allowed the claims over prior art that did not describe a computer system "adapted to being accessed . . . without the necessity of a pre-established relationship between the sending account and the receiving account." Dkt. No. 29-6 at 5-6.

It is possible, however, that "[a] novel abstract idea is still an abstract idea." *Netflix, Inc. v. Rovi Corp.*, 114 F. Supp. 3d 927, 937 (N.D. Cal. 2015), *aff'd*, No. 2015-1917, 2016 WL 6575091 (Fed. Cir. Nov. 7, 2016); *see also Diamond v. Diehr*, 450 U.S. 175, 190, 101 S. Ct. 1048, 1058, 67 L. Ed. 2d 155 (1981) ("The question therefore of whether a particular invention is novel is wholly apart from whether the invention falls into a category of statutory subject matter.") (internal quotations and citation omitted). While the concept of simultaneously transferring funds without the necessity of a pre-established link between accounts does not seem abstract, the term "abstract" in the context of § 101 law does not mean the same thing as it does in common parlance. Indeed, there is no definitive rule to determine what constitutes an "abstract idea" within the meaning of *Alice*. *See Enfish*, 822 F.3d at 1335. Rather, it is "sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Id.*

Comparing the claims of the patents-in-suit to claims assessed under § 101 in past cases reveals that the concept to which the claims are directed is remarkably similar to the category of claims most susceptible to conquest by § 101—those involving "fundamental economic and conventional business practices." *Id.* at 1335. Such claims are "often found to be abstract ideas,

even if performed on a computer." *Id.* (citing *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362-63 (Fed. Cir. 2015)).

The patents-in-suit describe a way in which funds can be simultaneously transferred between accounts without a pre-established link between those accounts. According to the patents, this is accomplished through an "electronic escrow agent." '786 patent at 6:29-58. Whether the Court considers this concept "fundamental" or not, it is impossible to distinguish it from other business methods found to be abstract. *See OIP Techs.*, 788 F.3d at 1362-63 (collecting cases). In fact, the concept (or at least how the concept is implemented) is similar to the use of a financial intermediary that was declared abstract in *Alice*. *See* 134 S. Ct. at 2355.

### D. *Alice* Step Two

Beyond the abstract idea of transferring funds between accounts without a pre-established link between them, the claims recite nothing more than "conventional computer activities or routine data-gathering steps." *See id.* at 1362-63. ITS insists that claim construction is necessary before making this determination. *See, e.g.*, Dkt. No. 29-1 at 4. But the patents themselves are sufficient to answer the question. The patents describe conventional media and components, such as personal computers, the Internet, cell phones, and ATMs, and expressly state that specialized hardware is not required. *See, e.g.*, '786 patent at 6:61-63; 14:30-37. If the claimed method of transferring funds requires an inventive hardware configuration or inventive software as ITS suggests, one would expect a more particularized claim, and probably a claim that could not be classified as abstract at all. *See, e.g.*, *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014). In sum, the claims fail to overcome *Alice* Step Two under any reasonable claim construction.

ITS's arguments to the contrary are not persuasive. Nearly half of ITS's response brief is devoted to an explanation of why FIB has not met its burden of invalidating the claims under § 101 at the pleading stage. ITS highlights unresolved fact issues, FIB's alleged clear and convincing evidence burden, FIB's failure to establish a representative claim, and the need for claim construction. Dkt. No. 41 at 1-12. The Court understands the burden and has carefully considered the procedural posture of this case, but ITS's arguments are unconvincing.

While it may be true that FIB's motion raises factual issues, those issues are not material to the subject-matter eligibility of the asserted patents. Whether the steps recited in the claims can be performed by a "human bank teller," for example, is not necessary to decide *Alice* Step One when the claims can adequately be compared to claims declared abstract in past cases. *See Amdocs (Isreel) Ltd. V. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016) ("Instead of a definition, then, the decisional mechanism courts now apply is to examine earlier cases in which a similar or parallel descriptive nature can be seen—what prior cases were about, and which way they were decided."). Accordingly, the Court need not answer whether a clear and convincing evidence burden applies to factual issues underlying subject-matter eligibility. *See, e.g.*, *CG Tech. Dev., LLC v. Big Fish Games, Inc.*, No. 216CV00857RCJVCF, 2016 WL 4521682, at *3 (D. Nev. Aug. 29, 2016) (discussing uncertainty in whether clear and convincing evidence burden applies). ITS's remaining arguments are unpersuasive.

## CONCLUSION

The Court therefore finds that the asserted claims are directed to subject-matter that is not patent-eligible under § 101. Accordingly, the claims are invalid, and FIB's motion to dismiss (Dkt. No. 26) should be granted. A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within fourteen days after being

served with a copy shall bar that party from de novo review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

    **SIGNED this 30th day of January, 2017.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE